STATE OF VERMONT

ENVIRONMENTAL COURT

In re Champlain College, Inc.  }
    304-306 Maple Street Dormitory Project  }        Docket No. 145-7-05 Vtec
        (Appeal of Baker, et al.)  }
  }

Decision and Order on Motion to Stay DRB Hearing or March 2007 Decision

Appellants Faye Baker, et al., are a group of eleven Burlington residents who asserted standing pursuant to 24 V.S.A. §4465(b)(4) in their appeal to this Court from a decision of the Development Review Board (DRB) of the City of Burlington, approving the application of Champlain College to renovate an existing building and construct a new building at 304-306 Maple Street for student housing, in the Champlain College Core Campus overlay zoning district within the University Campus zoning district of the City of Burlington. Appellants are represented by Todd D. Schlossberg, Esq.; Appellee-Applicant Champlain College, Inc. is represented by Mark G. Hall, Esq.; and the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. This Court's decision on the merits of the application was issued on March 20, 2007 and is now on appeal to the Vermont Supreme Court in its Docket No. 2007-155.

This Court approved the application, subject to the conditions that had been imposed in the DRB's decision (as amended by a settlement between Applicant and the City), and subject to an additional condition imposed by the Court, with respect to the parking requirements of the zoning ordinance.

In order to understand what the March 2007 decision did with respect to the issue of parking, why no "remand" was required or ordered, and why the DRB's current proceedings regarding the College's Institutional Parking Plan are related to but not a part of the decision on the permit for the dormitory project, it is necessary to understand the

1

way the current Zoning Ordinance treats parking for the academic and medical institutions in the University Campus zoning district, including Champlain College.

Like any other applicant, such institutions must apply for zoning permits for their individual projects. But in addition, within the University Campus zoning district each institution is also required to "provide off-street parking and loading facilities consistent with its needs" (independently of any specific project application). §10.2.1. Section 10.2.1 requires each institution to "maintain and monitor" a "comprehensive parking, loading and storage plan for the entire campus or institution," known as its Institutional Parking Plan, and to establish a facility-wide permit system to implement its plan. Under the current ordinance[1] the Institutional Parking Plans are not required to be periodically reviewed or approved by the DRB. Rather, the DRB is required to review and approve the then-current version of the Institutional Parking Plan at the same time as it is conducting the zoning review of an application for a specific project filed by that institution.

To facilitate this review, an institutional applicant must submit its facility-wide Institutional Parking Plan to the DRB, including any modifications made necessary by the zoning permit proposal, when applying for any zoning permit "which would increase parking demand." §10.2.1.

With regard to the dormitory application that was the subject of Docket No. 145-7-05 Vtec, the College argued that the addition of 94 students to the property did not trigger §10.2.1 because, assuming those students formerly commuted to campus and were changed to residential status, the overall parking demand of the institution would be reduced. Nevertheless, the Court ruled in the March 2007 decision that, even if the overall parking

_____

[1] A new zoning ordinance is under consideration by the City. The parties have not advised the Court whether these provisions are changed by the new ordinance, whether it has been or will be proposed for public hearing (making the new ordinance applicable to any new application), 24 V.S.A. §4449(d), nor whether the College has any plans to reapply under the newly proposed ordinance.

demand of the Champlain College facility would be reduced,

> unless none of the students in the proposed new dormitory will ever have visitors, need deliveries, or need to bring a car to the dormitory, the addition of 94 students to the property can be expected to generate some types of parking demand that will need to be accommodated in the vicinity of the building, even if all vehicles brought to campus by those students are kept during the week in remote parking. The proposed project therefore triggers §10.2.1 and needs to be accounted for in the College's Institutional Parking Plan.

> Moreover, because the proposed new dormitory will reduce the parking available in the McDonald-Whiting parking lot by five spaces as shown on the site plan (Exhibit 3), and because it will increase the parking demand within the McDonald-Whiting lot for some number of accessible parking spaces that can reasonably be expected to be associated with the new accessible student rooms on the ground floor of 304 Maple Street, the Institutional Parking Plan must address the localized parking demand generated by the dormitory, even if the dormitory represents a reduction in the institution-wide parking demand.

March 2007 Decision and Order, at pp. 14–15.

Once §10.2.1 is triggered, §10.2.2 then requires the DRB to review the College's Institutional Parking Plan and to make findings that the Institutional Parking Plan meets seven listed criteria. Only one of these criteria (§10.2.2(e)) relates to the additional parking and loading requirements generated by the proposed project that triggered the review of the Institutional Parking Plan in the first place. All the other criteria for review of the Institutional Parking Plan require the DRB to make findings as to the adequacy of the Institutional Parking Plan on a facility-wide basis.

In the present case, however, the DRB had not conducted the §10.2.2 review of the College's Institutional Parking Plan at all. Instead, its decision required the College to implement certain parking-related improvements and then to return to the DRB for its future consideration of the College's updated Institutional Parking Plan under the §10.2.2 criteria. Because the DRB had not yet performed the review of the College's Institutional Parking Plan in connection with the application for the proposed dormitory project, the

3

adequacy of the College's Institutional Parking Plan under §10.2.2 was not before the Court in Docket No. 145-7-05 Vtec. Accordingly, this Court's March 2007 decision ruled on the specific permit application, but required that the DRB would still have to perform the §10.2.2 review of the College's Institutional Parking Plan before a Certificate of Occupancy could be issued allowing the use of the buildings.

The March 2007 Decision specified the minimum elements of the College's Institutional Parking Plan necessitated by the proposed dormitory project, as follows:

> [E]ven if sufficient spaces are available at the Gilbane lot or other remote locations, the College must analyze and address what changes in the Institutional Parking Plan may be necessary, if any, to encourage, enable or require students with vehicles to do, at a minimum, all of the following: 1) actually to register the presence of those vehicles with the College, even if they are parked at a private off-campus location; 2) actually to obtain a parking sticker to park those vehicles (whether in campus lots or on the street) in the UC or CCO districts, so as to facilitate studies of parking behavior as well as enforcement of parking limitations; 3) actually to use the shuttle services available to access the remote parking; 4) actually to use the remote parking lots rather than to attempt to park in the adjoining neighborhood or in lots they are not authorized to use; and 5) actually to be assessed and actually to have to pay fines assessed at a level and with sufficient consequences for non-payment so as to have a deterrent effect on inappropriate parking behavior and to have an incentive effect on appropriate or desired parking behavior.

March 2007 Decision and Order, at p. 15.

The March 2007 Decision noted in a footnote at p. 11 that it would be "premature in the present appeal for this Court to address Appellants' concerns regarding their participation in any DRB review of the College's Institutional Parking Plan, as it relates to this project, or in any potential appeal of such DRB action."

Thus, the §10.2.2 review of the College's Institutional Parking Plan did not necessitate remand to the DRB by the Court, as it had not yet been performed by the DRB in the decision then on appeal. Rather, it was a related DRB task that the project had

triggered, separate from and in addition to the permit application[2] then before the Court. The March 2007 decision stated specifically that "it remains for the DRB in the first instance to rule on [footnote omitted] any proposed revisions to the Champlain College Institutional Parking Plan." This procedure is analogous to what occurs with regard to a project that requires, for example, both conditional use approval and site plan approval, but where only conditional use approval has been conducted and decided by the DRB. This Court may proceed with the appeal of the conditional use approval decision while the applicant applies for and proceeds with the site plan application at the DRB, without any requirement of remand.

That is, while the Court can and is encouraged to consolidate multiple approvals required for a single project, in an appropriate case when one approval is ready for trial and it is discovered at trial that another required approval has not yet been heard by the DRB, the Court may proceed to hear and decide the appeal that is ripe. In the present case the Court proceeded to render a decision on the specific permit application, but conditioned use of the project on the DRB's subsequent performance of the related required §10.2.2 review of the College's Institutional Parking Plan.

That DRB review is the one that is the subject of the present motion. It was contemplated in the Court's March 2007 decision. Appellants' have shown no irreparable injury from the DRB's proceeding with this review. Appellants' 'emergency' motion to enjoin it or to stay any portion of this Court's March 2007 decision is DENIED. The parties were informed orally of this decision, on the record of the telephone motion hearing in the morning of December 4, 2007, so that all participants in the DRB hearing scheduled for that evening would know that it could proceed.

---

[2] This may be contrasted with an applicant's request to redesign some aspect of a project to address the reasons for an earlier denial, which does require remand of a portion of the project to the DRB, as in the case cited by Appellee-Applicant: In re McGrew, Docket No. 2006-264 (Vt. Supreme Ct., July 18, 2007) (unpublished entry order).

This decision specifically does not address the potential for appeal of any decision the DRB may issue regarding the College's Institutional Parking Plan as a result of its hearing, nor the effect of any such appeal on the potential for occupancy of the dormitory project in the Spring 2008 academic term. Any such appeal would be a new appeal requiring a new notice of appeal and would receive a new docket number in this Court.

Dated at Berlin, Vermont, this 5th day of December, 2007.


_____
Merideth Wright
Environmental Judge